## Case No. 10,838.

### PATTON et al. v. REILY.

[1 Brunner, Col. Cas. 180;[1] 4 Cooke, 119.]

Circuit Court, D. Tennessee. 1812.

CONVEYANCE — REGISTRATION NECESSARY TO PASS LEGAL NOTICE.

The legal estate will not pass to the grantee by a deed of conveyance, unless such deed be registered, registration having been substituted by the legislature for livery of seizin.

[Cited in Olcott v. Bynum, 17 Wall. (84 U. S.) 58.]

The plaintiffs, in support of their title, produced in evidence a grant from the state of North Carolina to John G. Blount and Thomas Blount, for five thousand acres of land, as mentioned in the declaration; and they offered in evidence a deed from the grantees to David Allison, under whom they claim. This deed had upon the back of it the following indorsements: "This deed of bargain and sale from J. G. Blount and Thomas Blount to David Allison was this day proved to be the act and deed of the grantors by John Blackledge, a subscribing witness thereto. J. Haywood, J. S. C. L. E." "Let it be registered. J. Haywood, J. S. C. L. E." Upon the back of the deed also appeared a probate of the oaths of several witnesses, stating that the two subscribing witnesses were dead; that the persons called upon also were well acquainted with the handwriting of the subscribing witnesses, and the handwriting of John G. Blount and Thomas Blount; and that the attestation was in the handwriting of the witnesses. They also proved the handwriting of the grantors in the same way. Upon these probates respectively the deed had been registered. The plaintiffs also offered, and produced witnesses in open court who proved the handwriting of the subscribing witnesses, and that they were dead; and also the handwriting of the grantors, and that one of them, viz., Thomas Blount, was dead, and the other lived in North Carolina.

Dickinson and Cooke, for defendant, objected to reading the deed in evidence. As to the probate before J. Haywood, there can be no pretense for its legality. A law passed in 1794, authorizing deeds to be registered in this country, if proved before a judge of a superior court in another state. It is not pretended but that the person who took this probate is not, nor ever was, a judicial officer of this state; and if he were, the probate would still be illegal, because no law ever authorized proof of the execution of a deed in that manner. To make this probate and the consequent registration good it must in some way appear that the person receiving it really acted in the capacity which the law requires. To the end of the name J. Haywood is added the hieroglyphics J. S. C.

[1] [Reported by Albert Brunner, Esq., and here reprinted by permission.]

L. E., which the gentlemen will say mean justice of the superior court of law and equity. It does happen that these characters will correspond with the initials of that title; but they as well stand for almost anything else. It may be the cipher used in North Carolina, designating the title of their judges; but this court cannot officially take notice of it. Besides, if we can give a legal interpretation of these letters, and thereby be enabled to explain them so as to suit the ideas of the plaintiff's counsel, still there is an essential wanting, because it does not from the certificate appear of what state Mr. Haywood was a judge. There is not even an initial which stands for North Carolina. Although, then, he may be a judge of a superior court of law and equity for anything that appears to the court, it may be in some one of the territories, or even out of the United States. In short, it does not appear that he really occupied the station which the act of assembly required as a prerequisite to his receiving the probate.

Now, as to the second objection viz., the proof by parity of hands. It will not be contended on the other side that the deed now produced in evidence would pass any legal estate at common law. By the common law livery of seizin was necessary to be made upon every grant of an estate, whether of inheritance or for life only. 2 Bl. Comm. 318. To remedy the inconvenience which might result from this ceremony in England was passed the statute of Henry VIII., recognizing deeds of bargain and sale; and in this country the act of the North Carolina legislature, making, in substance, a similar provision, passed in 1715. It is entitled "an act to appoint public registers, and to direct the method that shall be observed in conveying lands," etc., and provides "that no conveyance, or bill of sale for lands (other than mortgage), in what manner of form soever drawn, shall be good and available in law, unless the same shall be acknowledged by the vendor, or proved by one or more evidences upon oath, either before the chief justice for the time being, or in the court of the precinct where the land lieth, and registered by the public register of the precinct where the land lieth, within twelve months from the execution thereof; and that all deeds so done and executed shall be valid, and pass estates in land, or right to other estate, without livery of seizin, attournment, or other ceremony whatsoever."

It will be argued by Mr. Whiteside, that as the legislature, in the act of 1715, required the deed previous to registration to be proved by evidence, it is not necessary to resort to the subscribing witnesses in those cases where proof of handwriting would be sufficient at common law. What would have been the construction of that act upon a deed offered to be proved in one year after the execution (which is not the case here), and before any other statute had passed on the subject, it will not now be necessary to inquire, as we expect to show that from a uniform train of legislative declarations it has been always required that the deed should either be acknowledged by the grantor, his agent or attorney, or proved by the subscribing witnesses. The next law which passed upon this subject was enacted in 1760, and expressly provides that before the deed can be admitted to registration it shall be acknowledged by the grantor, his agent or attorney, or proved by the oath of the subscribing witnesses, and gives two years time for registration. In the act of 1776 will be found a provision in the same words; so also in the acts of 1773, 1777, 1782, and 1784, and in every other law which has passed on the subject, except the law of 1811, which can be of no service to the plaintiffs, as the probate now objected to was made several years before. As a further evidence of the legislative meaning upon this point, if anything is required more than an express declaration, we will refer the court to an act passed in 1787, providing that the deeds from the office of Lord Grenville might be proved by parity of hands. Now, if this was understood to be the law before in relation to all deeds, it was, to say the least of it, extremely absurd to say it should apply to a particular kind of deeds; for it would have applied to them without any such law. It is, therefore, a fair mode of argument to say that, when the legislature recognized proof of a certain description as being sufficient to establish the execution of a particular kind of deeds, they meant thereby to exclude the idea of that proof being sufficient to prove the execution of other deeds. As a further illustration of the uniform view which the legislature have taken of this point we will refer the court to two statutes,—the one enacted by North Carolina in 1756 (chapter 6, § 4, Hayw. Rev. 66), and the other by the legislature of Tennessee, in the year 1806 (chapter 49, § 1, Hayw. Rev. 413). Each of these statutes was intended to remedy a particular inconvenience. The grantee had no summary method of compelling the attendance of witnesses to a deed, for the purpose of proving the execution preparatory to registration. This was an evil which the legislature felt anxious to cure, and therefore they passed these statutes, respectively, authorizing the grantee to apply to the court of the county where land might lie, and procure a summons for the subscribing witnesses, compelling them to attend, and testify what they knew about the execution of the deed. The evil was that the grantee had no summary way of compelling the proof of the execution of his deed. (Perhaps the only previous mode was by a bill to perpetuate testimony.) The legislature, to remedy this inconvenience, passed the laws in question, authorizing a process to compel the attendance of the subscribing witnesses. If it had been the law that the execution of

the deed could be proved by witnesses other than those who were subscribed as such, this remedy would be but half complete. In truth, it was never believed by the legislature that the deed could be proved by any but the subscribing witnesses, and therefore, when they make a remedial provision on that subject, they only speak of witnesses of that legal character.

The only statute which we shall notice was passed in 1811, subsequent to the respective probates. It provides that where the witnesses are dead, or live out of the state, and the grantor is also dead, that the deed may be registered by proving the handwriting of the witnesses and grantor; and then when it is so proved and registered it shall be read in evidence. The plaintiffs do not pretend that they come within the provision of this act, nor can they do so, because their probate and registration is long prior to the passage of the law, and because the law is only prospective, and is to continue in force for two years thereafter. It seems most manifest that no such privilege existed previous to the enactment of this statute, and that the object of the legislature was to provide a new remedy, which was to be tried for a limited time. But admitting that a deed for land may be proved as an instrument at common law, so as to pass the legal estate to the grantee, and still we must prevail. The evidence offered is ex parte. In those cases at common law where proof of the execution was admitted by persons other than the subscribing witness, it was in open court, and not by an ex parte examination.

As to the third objection, viz., proof of execution upon trial, we will briefly state what we conceive to be the law. When this testimony is offered it is upon the principle that there has been no registration. We contend that until registration no estate passes. The act of 1715 is the only law of this country which authorizes lands to pass by deed. It is in substance a copy of the statute (27 Hen. VIII.) in relation to deeds of bargain and sale. The English statute requires that the deed shall be enrolled; and our statute requires that it should be registered; and these things must be respectively done before any estate passes. It may be that when registered it relates back to the time of execution; but still until it is registered the legal estate is not in the grantee. It has constantly been determined in England that no estate passes until after enrollment. 1 Bac. Abr. 277, 278; Cro. Jac. 52; Hynde's Case, 4 Coke, 70a; 2 Com. Dig. 65, 66. Upon this point we know of no determination in this country. A case occurred in North Carolina in which the court said that when the deed was enrolled, it passed the estate ab initio, and would so operate as to consider the grantee as legally seized from the execution. 2 Hayw. N. C. 287, 288. Such a determination could alone be founded upon the idea that no estate passed without registration. Indeed, the act of assembly expressly requires it preparatory to the passing a legal estate; and it is not for the court to say it may be passed in any other way. In truth, it will not do for the gentleman to say that the act is to be disregarded, for it is the very foundation of his claim; it has no effect whatever without it. In those cases where an instrument has been supported by discarding a statute made upon the subject, the courts have done so upon the ground that the instrument is good at common law. There is no pretense for such a thing in this case. There never was a case where a right accrued under a statute that such right was adjudged valid if the express requisitions of the statute had not been complied with. Those requisitions have not been complied with in this case; the deed has not been registered; and therefore we humbly hope that it will be rejected.

M'NAIRY, District Judge. The objections which apply to the first two modes of proof offered by the plaintiffs have been decided as valid by this court upon a former occasion. At that time I was of opinion that the execution of the deed might be proved upon the trial, and given in evidence before it had been registered. After a very full investigation I am constrained to alter that part of my former decision. Registration was intended by the legislature to stand in the place of livery of seizin. By the common law no estate could pass without livery of seizin; and the same may be said as to its substitute. Lands as conveyed by this deed, would not pass the estate at common law; and if it will pass, it must be by act of assembly. The act of 1715 requires the deed to be registered before a legal estate is vested in the grantee. To create a title under this act of assembly the party claiming the benefit of it must have complied with its requisitions, one of which is that the deed shall be registered. The deed cannot be read in evidence.

And the plaintiffs were nonsuited.

NOTE. Unregistered deed cannot be read in evidence of conveyance. See Olcott v. Bynum, 17 Wall. [84 U. S.] 58, citing above case.
[For other actions by same plaintiffs against different defendants, see Cases Nos. 10,831–10,835.]